SO ORDERED.

SIGNED this 12th day of May, 2026.



Dale L. Somers
United States Chief Bankruptcy Judge

*Designated for online publication*
**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| In re:<br><br>Lane Andrew Patmon and<br>Amy Elizabeth Patmon,<br><br>         Debtors. | **Case No. 24-40496**<br>**Chapter 12** |
| Kenneth Ritz,<br><br>        Plaintiff,<br><br>v.<br><br>Lane Andrew Patmon,<br><br>        Defendant. | **Adversary No. 24-7016** |

**Lane Andrew Patmon,**

       **Third-Party Plaintiff,**

**v.**

**Sandhills Global, Inc. d/b/a AUCTIONTIME.COM, Omaha Creek Trailer Sales, Inc., and Beau Barclay,**

       **Third-Party Defendants.**

## <u>Memorandum Opinion and Order Granting Sandhills' Motion to Dismiss</u>

The plaintiff in this adversary proceeding filed a dischargeability complaint against Lane and Elizabeth Patmon (collectively, the "Debtors"). Mr. Patmon subsequently filed a Cross-Complaint[1] against Sandhills Global, Inc. d/b/a AuctionTime.com ("Sandhills" or "AuctionTime"). Sandhills moved to dismiss the Cross-Complaint. For the following reasons, the Court grants Sandhills' motion.

## I.    Background and Procedural History

In early February 2024, Lane Patmon ("Patmon") placed a call to AuctionTime's 1-800 phone number to discuss an internet auction sale of certain pieces of farm machinery and equipment. AuctionTime is an online auction platform that connects buyers and sellers of heavy machinery and equipment. A person at AuctionTime's main office then reached out to Beau Barclay ("Barclay"), a field representative and owner of Omaha Creek Trailer Sales, Inc. ("Omaha Creek"),

---

[1] Although Mr. Patmon's characterization of this pleading as a "Cross-Complaint" is not procedurally correct, the Court interprets the Cross-Complaint as a third-party complaint. Patmon's mischaracterization does not impact the Court's analysis.

directing him to respond to Patmon. Barclay contacted Patmon to set up a meeting and subsequently drove to Patmon's farm to discuss the details of the sale.

On or about February 21, 2024, Patmon and Omaha Creek entered into an Online Auction Listing & Marketing Agreement (the "Agreement"). Under the Agreement, Patmon authorized Omaha Creek to market and sell certain pieces of equipment. According to Patmon, he later advised Barclay about some misinformation in the online descriptions of the equipment, but Barclay did not remove the advertising.

In March 2024, an auction took place during which the listed items were sold to third party buyers and Barclay. Multiple disputes arose over the distribution of the sale proceeds and release of the equipment sold. Patmon and his wife filed their Voluntary Petition under Chapter 12 on July 23, 2024.

The Adversary Proceeding[2]

On December 19, 2024, Kenneth Ritz ("Ritz"), a buyer at the auction, filed a Complaint against the Debtors under § 523(a)(2), (a)(4), and (a)(6) to determine the dischargeability of the $75,075 debt owed to Ritz and to recover consequential damages of $18,500.[3] Ritz was the successful bidder of a tractor that he alleges he didn't receive. Furthermore, Ritz contends the tractor was advertised as having fewer hours on it than it actually had.

---

[2] Two other adversary proceedings related to the auction are pending in this bankruptcy case: Nos. 24-07011 and 25-07018.
[3] Doc. 1. Ritz dismissed his claims against Amy Patmon. Doc. 30.

In his Answer, Patmon denies the allegations and includes a Cross-Complaint[4] against Omaha Creek and Barclay, bringing the following actions against them:

Count I – Breach of Contract
Patmon asserts Omaha Creek and Barclay breached the covenant of good faith and fair dealing when they misrepresented the condition of the machinery and failed to correct the advertising after Patmon brought it to their attention. He claims he was sued by a purchaser (Ritz) as a result.

Count II – Conversion
Patmon alleges  Omaha Creek and Barclay misappropriated the sale proceeds for their own use. He asserts their actions were willful and committed with malice or reckless disregard for the rights of Patmon and his creditors. He seeks actual, consequential and punitive damages.

Count III – Breach of Fiduciary Duty
Patmon argues Omaha Creek and Barclay have commingled the sale proceeds with personal and/or business funds – the proceeds were trust funds, and the Plaintiffs had a fiduciary duty to turn them over to Patmon and his creditors. He claims this misconduct constitutes a breach of the duties of good faith, honesty, full disclosure and fair dealing.

On July 16, 2025, Patmon filed a second Cross-Complaint, this time against Sandhills (the "Sandhills Complaint").[5] The Sandhills Complaint is virtually identical to the Cross-Complaint filed against Omaha Creek and Barclay (the counts against Sandhills are collectively referred to as the "Patmon Claims").

---

[4] Doc. 6. *See* fn. 1.
[5] Doc. 59. *See also* fn. 1.

4

Sandhills' Motion to Dismiss

On September 9, 2025, Sandhills filed a motion to dismiss the Sandhills Complaint and dismiss Sandhills as a third party defendant from this adversary proceeding (the "Motion").[6] Sandhills' position can be distilled into the following alternative arguments: 1) the Patmon Claims have been brought in an improper venue and should be dismissed based on the doctrine of *forum non conveniens*, and 2) the Sandhills Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) because Patmon has failed to state claims upon which relief can be granted. Because the Court concludes dismissal is appropriate based on the former, the Court need not reach the latter.

Sandhills' Motion centers on the Terms of Use found on its website. Sandhills utilizes clickwrap terms of service to govern users' access and use of the computer server.[7] According to Sandhills' Chief Operations Officer, Patmon first registered with the AuctionTime site on August 3, 2021, and would have accepted the Terms of Use then.[8] Each time Patmon logged in, he necessarily agreed to them.[9]

---

[6] Doc. 67.

[7] A "clickwrap agreement" is a digital contract where users explicitly indicate their consent to terms and conditions by performing an affirmative action, typically involving clicking a button labeled "I Agree" or checking a box to confirm acceptance. *What Is a Clickwrap Agreement and Is It Enforceable?,* Legal Clarity (Aug. 17, 2025), https://legalclarity.org/what-is-a-clickwrap-agreement-and-is-it-enforceable/. This type of agreement is ubiquitous today.

[8] Declaration of Evan Welch, attached to the Motion.

[9] *Id.*

The following language appears prominently at the start of the Terms of Use:

> **THESE TERMS ARE A BINDING CONTRACT BETWEEN YOU AND SANDHILLS. PLEASE READ THEM CAREFULLY.** BY ACCESSING AND USING OUR SITES AND SERVICES, WHETHER AS A VISITOR, BIDDER OR SELLER, YOU CONFIRM YOU HAVE READ, UNDERSTOOD AND AGREE TO BE BOUND BY THESE TERMS. WE RECOMMEND THAT YOU PRINT A COPY OF THESE TERMS FOR FUTURE REFERENCE.[10]

Most relevant to the Motion is the Term of Use's forum selection clause (the "FSC") stating "[a]ny disputes arising out of the General Terms of Use are subject to the exclusive jurisdiction of the courts of Lancaster County [Lincoln], Nebraska, USA."[11] The question before the Court is whether the FSC is enforceable.

## II.    Analysis

### A.    The adjudication of the Patmon Claims is not a core proceeding so the FSC is enforceable.

Bankruptcy judges are authorized to hear and determine all bankruptcy cases and "all core proceedings arising under title 11."[12] The term "core proceedings" is statutorily defined and includes matters concerning the administration of the estate.[13] A matter that has no existence outside of bankruptcy is a core proceeding.[14] Conversely, "[a] proceeding is non-core if it does not invoke

---

[10] *Id.,* Exh. A (capitalization and bold in original).
[11] *Id.*
[12] 28 U.S.C. § 157(b)(1).
[13] 28 U.S.C. § 157(b)(2)(A)-(P).
[14] *Gardner v. United States* (*In re Gardner*), 913 F.2d 1515, 1518 (10th Cir. 1990).

any substantive right under federal bankruptcy law and in the absence of bankruptcy, could have been brought in a District Court or state court."[15] And simply because the bankruptcy estate has the *potential* to recover funds as a result of an adversary proceeding does not render the proceeding "core."[16]

Bankruptcy courts also have jurisdiction over related proceedings.[17] The widely accepted definition of a "related to" proceeding was articulated by the Third Circuit Court of Appeals in the *Pacor* case[18] and adopted by the Tenth Circuit Court of Appeals in the *Gardner* case.[19] Under this test, a "related to" proceeding is one where "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[20] On the other hand, the mere fact there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of the bankruptcy court's "related to" jurisdiction.[21]

---

[15] *In re Dynamic Drywall, Inc.*, No. 15-5005, 2015 WL 4497967, at *3 (Bankr. D. Kan. July 21, 2015) (citations omitted).

[16] *Montoya v. Curtis* (*In re Cashco, Inc.*), 614 B.R. 715, 720 (Bankr. D.N.M. 2020). *See also Hayim v. Goetz* (*In re SOL, LLC*), 419 B.R. 498, 506 (Bankr. D. Fla. 2009) ("[A] matter cannot be deemed core merely because the debtor holds a claim, which, if successful, could increase the assets of the estate."); *Peterson v. 610 W. 142 Owners Corp.* (*610 W. 142 Owners Corp.*), 219 B.R. 363, 372 (Bankr. S.D.N.Y. 1998) (that the plaintiffs may recover a portion or all of any judgments against the defendant from insurance proceeds does not transform this otherwise non-core, related-to adversary proceeding into a core matter).

[17] 28 U.S.C. §§ 157(a), 1334(b).

[18] *Pacor v. Higgins*, 743 F.2d 984 (3d Cir. 1984) (partially overruled on other grounds).

[19] *Gardner*, 913 F.2d at 1518.

[20] *Pacor,* 743 F.2d at 994. *See also In re Preston*, No. 18-41253, 2021 WL 560118, at *2 (Bankr. D. Kan. Feb. 8, 2021).

[21] *Safeco Ins. Co. of America v. Farmland Indus., Inc.* (*In re Farmland Indus., Inc.*), 296 B.R. 793, 804 (B.A.P. 10th Cir. 2003).

7

Courts have routinely declined to enforce forum selection clauses in core proceedings.[22] Thus, one of the keys to the issue of whether the FSC should be enforced is the characterization of the Patmon Claims as either core or non-core.[23]

Sandhills contends the Patmon Claims do not arise under title 11 and their resolution does not require the interpretation or enforcement of bankruptcy law-- therefore, the claims are not core and lack the connection to bankruptcy sufficient to confer this Court's jurisdiction. Sandhills admits Patmon's claims may "conceivably" have an effect on the bankruptcy estate to a limited extent as any recovery of monetary damages against Sandhills could be used to pay creditors; however, that is the extent of the connection. For these reasons, Sandhills asserts, enforcement of the FSC is appropriate.[24]

Patmon argues this is a core proceeding under 28 U.S.C. §157(c)(2)(O) because the Patmon Claims affect liquidation of the assets of the estate. Further, he asserts the Patmon Claims arise in the context of two adversary proceedings, both deemed core matters, and the claims in those proceedings cannot now be deemed non-core. Thus, the FSC should not be enforced.

---

[22] *See, e.g.*, *Kurz v. EMAK Worldwide, Inc*, 464 B.R. 635, 641 (D. Del. 2011) (concluding that forum selection clauses are unenforceable when the state action falls within a bankruptcy court's core jurisdiction); *Access Care, Inc. v. Sten-Barr Network Solutions, Inc.* (*In re Access Care, Inc.*), 333 B.R. 706, 713 (Bankr. E.D. Pa. 2005) (forum selection clause enforced even when it was "debatable whether any of Debtor's claims fall within the bankruptcy court's 'core' jurisdiction.").

[23] *See In re D.E. Frey Group, Inc. v. FAS Holdings, Inc.* (*In re D.E. Frey Group, Inc.*), 387 B.R. 799, 807 (D. Colo. 2008) (public policy against transferring core proceedings pursuant to a forum selection clause is only one factor and should not be given controlling weight).

[24] Doc. 67 at 10-11.

Both parties cite *In re Cashco* to support their respective positions.[25] In that case, a class-action suit was filed against the debtor in state court before the debtor filed bankruptcy. The state court imposed monetary sanctions against the debtor and they were deposited into the court's registry.

After the bankruptcy filing, the trustee asserted claims for legal malpractice and breach of fiduciary duty in the state court against the attorneys who previously represented the debtor. The attorneys removed the case to the bankruptcy court – initiating an adversary proceeding – and filed a motion to dismiss. The trustee moved for remand to state court. The defendants objected on the grounds that the adversary proceeding was a core proceeding under § 157(b)(2)(O) because the outcome *could* affect the liquidation of assets. The court disagreed, reasoning that the potential of a recovery was insufficient to characterize the proceeding as core.[26]

Additionally, the attorneys argued because their defense implicated issues concerning property of the estate, the entire adversary proceeding was core. The court rejected that argument also. It acknowledged that "an otherwise non-core proceeding can become core when a defendant's core counterclaim involves facts inextricably intertwined with the plaintiff's claims."[27] It distinguished this case, however, because 1) the attorneys had not asserted a claim against the estate,[28] and

[25] *Cashco*, 614 B.R. 715.
[26] *Id*. at 720.
[27] *Id*. at 722.
[28] Whether the defendant filed a proof of claim is a significant part of the core/non-core analysis. *See e.g.*, *Statutory Comm. of Unsecured Creditors v. Motorola, Inc.* (*In re Iridium Operating LLC*), 285 B.R. 822, 830 (S.D.N.Y. 2002) (citations omitted) (filing a proof of claim invokes the core jurisdiction of the bankruptcy court).

2) whether the sanctions in the registry constituted estate property was not dependent on the facts necessary to adjudicate the state court claims. The court concluded "[t]he Trustee's claims are merely 'related to' the Debtor's bankruptcy case because the outcome of the adversary proceeding could conceivably have an effect on the bankruptcy estate."[29] That is, the claims were related to the bankruptcy proceeding and were not core.

In the instant case, while the Patmon Claims arise from the same transaction on which this adversary proceeding is based, Sandhills' argument that the Patmon Claims are non-core is persuasive. The Patmon Claims are based on state law. Sandhills has not filed a claim against the bankruptcy estate nor has it filed an affirmative defense that requires bankruptcy expertise. The benefit to the estate is speculative. As the Tenth Circuit BAP put it: "Their claim lacks an anchor to bankruptcy law sufficient to confer core jurisdiction...."[30] At most, the Patmon Claims could be characterized as related proceedings.

Likewise, Patmon's argument that his claims against Sandhills fall under 28 U.S.C. § 157(b)(2)(O) as a core proceeding affecting the liquidation of the assets of the estate is not compelling. As Sandhills notes, courts have rejected that argument.

---

[29] *Id.*
[30] *In re Houlik*, 481 B.R. 661, 674 (B.A.P. 10th Cir. 2012).

In the words of one such court:

> We decline, however, to give such a broad reading to subsection 157(b)(2)(O); otherwise, the entire range of proceedings under bankruptcy jurisdiction would fall within the scope of core proceedings, a result contrary to the ostensible purpose of the 1984 Act.[31]

In short, Patmon has not demonstrated that his claims against Sandhills are core and therefore invoke this Court's jurisdiction. The Court, therefore, rejects Patmon's argument that the FSC is unenforceable on those grounds.

## B. Enforcement of the FSC does not violate public policy.

When considering a typical dismissal motion based on *forum non conveniens*, the court weighs various private and public interest factors to determine whether dismissal would serve the convenience of the parties and otherwise promote the interest of justice.[32] The existence of a forum selection clause changes the calculus; a court considers the public-interest factors only.[33] The Court will now address the public interest and policy factors raised by the parties.

---

[31] *Wood v. Wood* (In re Wood*)*, 825 F.2d 90, 95 (5th Cir. 1987). *See also Baum v. Baum* (*In re Baum*), 638 B.R. 748, 753 (Bankr. E.D. Mich. 2022) (interpreting § 157(b)(2)(O) broadly would essentially make a core proceeding out of any pre-petition state law claim asserted by a bankruptcy debtor); *Mugica v. Helena Chemical Co.* (*In re Mugica*), 362 B.R. 782, 788 (Bankr. S.D. Tex. 2007) (declining to give a broad reading of § 157(b)(2)(O)).

[32] *K.R.W. Construction, Inc. v. Stronghold Eng'g, Inc.*, 598 F. Supp.3d 1129, 1143 (D. Kan. 2022). Though Sandhills' uses the doctrine of *forum non conveniens* and "improper venue" interchangeably and does not specifically refer to Bankruptcy Rule 7012 (dismissal for improper venue), the analysis is virtually the same under both theories. *See, e.g., Lofstedt v. Nebraska Bank* (*In re York*), No. 25-01317, 2026 WL 729815 (Bankr. Colo. March 13, 2026).

[33] *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 62-3 (2013); *K.R.W. Construction, supra.*

### 1. Forum selection clauses are *prima facie* valid because they protect the parties' expectations.

Historically, forum selection clauses were found to be contrary to public policy and, therefore, unenforceable.[34] In the widely-cited *M/S Bremen v. Zapata Off-Shore Co.* case, however, the Supreme Court noted a trend toward accepting these clauses to give effect to the expectations of the parties in freely negotiated agreements if unaffected by fraud or undue influence.[35] The Supreme Court stated the defendant seeking to defeat a forum selection clause must clearly show "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."[36] In other words, to overcome the presumption that a forum selection provision is valid, a party must make "a showing of inconvenience so serious as to foreclose a remedy, perhaps coupled with a showing of bad faith, overreaching or lack of notice."[37]

That burden is a heavy one.[38] Broad and conclusory allegations of fraud without specific factual allegations or evidentiary support are insufficient to invalidate forum selection clauses.[39] An underlying principle of the relevant cases is

---

[34] *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9 (1972). Though the *Bremen* case involved admiralty law, the application of the principle is not limited to admiralty cases. *Akesogenx Corp. v. Zavala,* 55 Kan. App. 2d 22 (Kan. Ct. App. 2017) (citations omitted).

[35] *Id.* at 12-13.

[36] *Id.* at 15.

[37] *Teran v. GB Int'l, S.P.A.,* 920 F. Supp. 2d 1176, 1183 (D. Kan. 2013) (citing *Bremen*, 407 U.S. at 10, 15, and *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F. 2d 953, 957 (10th Cir. 1992)).

[38] *Riley*, 969 F.2d at 957.

[39] *Id.* at 960 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594 (1991) and *Spradlin v. Lear Siegler Mgmt. Servs.,* 926 F.2d 865, 868 (9th Cir. 1991)).

12

that it is the duty of every contracting party to learn and know the contents of a contract before signing it.[40]

Patmon admits that generally, a forum selection clause is valid and enforceable unless the party seeking to invalidate it shows that enforcement would be unreasonable under the circumstances.[41] He asserts in this case, however, the FSC "is so unfair and inconvenient that it, for all purposes, deprives [him] of a remedy or his day in court."[42] He states further that his allegations of overreaching and bad faith are sufficient to defeat the FSC, citing *Riley v. Kingsley Underwriting Agencies, Ltd.*[43] But in that case, the Tenth Circuit ruled the forum selection clause was enforceable. Riley, an American citizen, entered into an agreement with a British underwriter. The agreement provided the courts of England would have exclusive jurisdiction over any disputes. Riley filed an action in federal district court against the defendant for securities laws violations and fraud. The district court held the choice of forum provision was valid and enforceable. Riley appealed. The Tenth Circuit affirmed for several reasons: 1) the underwriting agreement reflected numerous contacts with the foreign forum; 2) Riley would not be deprived of his day in court though his remedies may be different or less favorable; 3) Riley never pleaded that the specific forum selection clause was obtained by fraud; and 4)

---

[40] *Commercial Credit Corporation v. Harris,* 212 Kan. 310, 314 (Kan. 1973).
[41] Doc. 71 at 7.
[42] *Id.* at 9.
[43] 969 F.2d 953 (10th Cir. 1992).

nothing in the record showed Riley would get anything other than a fair hearing in England.[44]

Here, Patmon does allege bad faith and overreaching by Sandhills, yet his allegations are largely directed at Barclay, including:

- Barclay never specifically confirmed with Patmon that the descriptions of the auction items were correct before posting them for sale;

- Barclay misrepresented Patmon's tractor as having fewer hours on the meter than what was actually on the tractor; and

- Barclay refused to correct the advertising or remove the items from the auction site as Patmon demanded.[45]

Patmon contends bad faith is shown by AuctionTime's failure to respond or meaningfully address Patmon's repeated requests to have the listing taken down prior to the sale of the misrepresented items.[46] He also contends "[a]fter ignoring reasonable requests for help, allowing harm through inaction, refusing to accept financial responsibility, and overreaching, demanding out-of-state litigation shows a clear pattern of bad faith."[47] These are conclusory, unsupported statements that are insufficient to render the FSC unenforceable.

Patmon claims further, without supporting evidence, an out of state proceeding would cause him undue hardship: travel expenses, extended time away from home and employment, the cost of engaging new attorneys, compelling

---

[44] *Id.*

[45] Doc. 71. The link Patmon makes between Barclay and Sandhills is that "it is Patmon's contact with AuctionTime that resulted in the connection with Barclay, and Patmon did not independently seek out Barclay as a seller's agent." *Id.* at 4.

[46] *Id.* at 10.

[47] *Id.* at 11.

witnesses to travel. Under the *Bremen* standard, a showing of inconvenience is also insufficient to defeat a forum selection clause. Moreover, Patmon's personal inconvenience constitutes a private interest, a factor not generally considered when a forum selection clause is involved.

Patmon will not be deprived of his day in court – he can proceed with his claims against Barclay and Omaha Creek through this adversary proceeding. Additionally, Nebraska is not comparable to a foreign forum; while it may be inconvenient to cross the state line,[48] Patmon has not asserted he would receive anything other than a fair trial there. Patmon has failed to meet his burden to overcome the presumption of the FSC's validity.

### 2. The policy of centralization is not violated.

Courts have recognized the strong public policy favoring centralization of bankruptcy proceedings in a bankruptcy court.[49] This policy justifies the non-enforcement of a forum selection clause in the interest of justice and the public interest in providing debtors an orderly and expeditious rehabilitation.[50] Conversely, in the Tenth Circuit, "[b]ankruptcy courts should be reluctant to entertain questions which may be equally well resolved elsewhere."[51]

---

[48] The Court notes as an aside the distance from Patmon's residence to state court in Lancaster County is actually shorter than the distance from his residence to this Bankruptcy Court.
[49] *Kurz,* 464 B.R. at 640 (citing cases).
[50] *See Iridium*, 285 B.R. at 837; *Societe Nationale Algerienne Pour La Recherche, etc. v. Distrigas Corp.,* 80 B.R. 606, 610 (D.Mass.1987).
[51] *First State Bank & Trust Co. of Guthrie, Okla. v. Sand Springs State Bank of Sand Springs, Okla.,* 528 F.2d 350, 354 (10th Cir.1976).

Patmon argues public policy concerns justify the non-enforcement of the FSC, citing a section in the *Kurz* case[52] which lists a number of courts acknowledging the favorable policy of centralization. Notably, Patmon omits the sentences immediately following the litany of cases: "However, the importance of centralization waxes and wanes with the characterization of the proceeding as either core or non-core. Consequently, the core and non-core distinction dictates enforceability of a forum selection clause."[53] The court in *Iridium* likewise articulated the importance of considering this distinction:

> Further, although there is a strong policy favoring the enforcement of forum selection clauses in this Circuit, this policy is not so strong as to mandate that forum selection clauses be adhered to where the dispute is core. "Transferring a core matter that is not 'inextricably intertwined' with non-core matters adversely impacts the strong public policy interest in centralizing all core matters in the bankruptcy court."[54]

It follows that enforcing a forum selection clause when the dispute is non-core would not violate the policy of centralization. As noted previously, since the Patmon Claims are non-core, enforcement of the FSC would not violate this policy.

### 3. The Kansas Consumer Protection Act is inapplicable.

One of the purposes of the Kansas Consumer Protection Act (the "KCPA") is "to protect consumers from suppliers who commit deceptive and

---

[52] *Kurz,* 464 B.R. at 640.

[53] *Id*. at 640-41 (internal citations omitted). *See also In re Exide Technologies*, 544 F.3d 196, 206 (3rd Cir. 2008) ("Whether claims are considered core or non-core proceedings dictates not only the bankruptcy court's rule and powers but also ... the enforcement of forum selection clauses.").

[54] *Iridium*, 285 B.R. at 836-37.

unconscionable practices."[55] Patmon argues enforcement of the FSC violates this policy and the KCPA's waiver provision: "Except as otherwise provided in this act, a consumer may not waive or agree to forego rights or benefits under this act."[56] Although Patmon does not expressly state this, we can infer he is contending the FSC acts to waive his right to bring the action against Sandhills in a Kansas court under the KCPA's venue provision[57] – therefore, the waiver statute prevents the operation of the FSC.

This argument is flawed. The venue provision expressly applies to actions brought under the KCPA. As Sandhills points out, Patmon's claims against Sandhills were not brought under the KCPA so the KCPA does not apply.

Indeed, the only case Patmon cites to support his position, *Kansas City Grill Cleaners, LLC v. BBQ Cleaner, LLC*,[58] actually supports Sandhills' position that the KCPA is inapplicable here. The plaintiff in that case entered into a contract with the defendant for the purchase of outdoor grill supplies. The contract included a forum selection clause providing that the venue for any resulting litigation was only proper in New Jersey. When a dispute arose, the plaintiff filed a petition in Kansas

---

[55] Kan. Stat. Ann. § 50-623(b).
[56] Kan. Stat. Ann. § 50-625.
[57] The KCPA's venue provision states:
> Every action *pursuant to this act* shall be brought in the district court of any county in which there occurred an act or practice declared to be a violation of this act, or in which the defendant resides or the defendant's principal place of business is located. If the defendant is a nonresident and has no principal place of business within this state, then the nonresident defendant can be sued either in the district court of Shawnee county or in the district court of any county in which there occurred an act or practice declared to be a violation of this act.

Kan. Stat. Ann. § 50-638(b) (emphasis added).
[58] 57 Kan. App. 2d 542 (Kan. Ct. App. 2019).

17

alleging the defendant *violated the KCPA* by engaging in a deceptive trade practice. The defendant moved to dismiss based on the forum selection clause and the district court dismissed the case. The plaintiff appealed. The court of appeals reversed: "[A] Kansas consumer's right to pursue *a KCPA action* in a Kansas venue is a right that may not be waived. And allowing the parties' forum-selection clause to eliminate this right in violation of K.S.A. 50-625(a) would contravene Kansas public policy.[59]

The Patmon Claims were not brought under the KCPA. The first time Patmon even mentioned the statute was in its Objection to the Motion. Thus, the FSC cannot violate the KCPA because it does not apply to the Patmon Claims.

## III.    Conclusion

Forum selection clauses are enforced in all but the most exceptional cases. This case is not exceptional. Patmon has not satisfied his burden to overcome the presumption of the FSC's validity nor has he demonstrated that enforcement of the FSC violates public policy. Accordingly, the Motion is granted. Patmon's Cross-Complaint against Sandhills is hereby dismissed, and Sandhills is dismissed as a party to this adversary proceeding.

---

[59] *Id.* at 553 (emphasis added). *See also K.R.W. Construction, Inc. v. Stronghold Eng'g, Inc.*, 598 F. Supp.3d 1129, n. 43 (D. Kan. 2022) (noting the *Kansas City Grill Cleaners* case involves a different statute than the one in this case and is thus irrelevant to the issue of the enforceability of the forum selection clause here).

Sandhills makes a secondary argument about the KCPA's inapplicability: Sandhills is exempt because § 50-635(a) provides the statute does not apply to "a publisher ... engaged in the dissemination of information or the reproduction of printed or pictorial matter so far as the information or matter has been disseminated or reproduced on behalf of others without actual knowledge that it violated the Kansas consumer protection act." This argument has merit given Sandhills only disseminates information posted on AuctionTime by its users and the Terms of Use expressly state Sandhills has no control over the content provided on its website. *See* Doc. 72 at 8.

**It is so ordered.**

###

19